659 F.2d 745
 UNITED STATES of America ex rel. Eddie ALLEN, Petitioner-Appellee,
v.
Gayle M. FRANZEN, Director, Department of Corrections, and
Thaddeus Pinkney, Warden, Pontiac Correctional
Center, Respondents-Appellants.
 No. 78-2140.
 United States Court of Appeals,
Seventh Circuit.
 Aug. 27, 1981.
 
 Patrick J. Calihan, Timothy B. Newitt, Donald B. Mackay, Asst. Attys. Gen., Crim. Justice Div., Chicago, Ill., for petitioner-appellee.
 Ralph Ruebner, Deputy State Appellate Defender, Chicago, Ill., for respondents-appellants.
 Before LAY, Chief Judge,* SWYGERT, Senior Circuit Judge, and PELL, Circuit Judge.
 SWYGERT, Senior Circuit Judge.
 
 
 1
 Petitioner Eddie Allen was convicted of murder in a jury trial in Peoria County, Illinois, and was sentenced to a prison term of eighteen to fifty years. The conviction was affirmed by the Illinois Appellate Court, Third Judicial District, People v. Allen, 37 Ill.App.3d 619, 346 N.E.2d 486 (1976). The Illinois Supreme Court denied Allen leave to appeal, and the United States Supreme Court denied his petition for writ of certiorari, Allen v. Illinois, 430 U.S. 956, 97 S.Ct. 1603, 51 L.Ed.2d 806 (1977).
 
 
 2
 On February 8, 1978, Allen filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Southern District of Illinois. The court granted the habeas petition, vacated petitioner's conviction, and allowed the State ninety days to retry or release him. The State appealed on August 16, 1978; the district court stayed its order pending the appeal. We affirmed the decision of the district court, United States ex rel. Allen v. Rowe, 591 F.2d 391 (7th Cir. 1979), vacated sub nom. Franzen v. Allen, 447 U.S. 917, 100 S.Ct. 3006, 65 L.Ed.2d 1110 (1980). The Supreme Court vacated our judgment and remanded the case to us for further consideration in light of Jenkins v. Anderson, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980).
 
 
 3
 Under our Circuit Rule 19, the parties have briefed the issue that is before this court on remand: whether the prosecutor's cross-examination of a criminal defendant about his failure to tell his exculpatory story to police upon his arrest constituted reversible error. We conclude that, in the circumstances of this case, the prosecution's attempt to impeach petitioner's testimony by his silence was unconstitutional, and accordingly, we affirm the judgment of the district court.
 
 
 4
 * Petitioner shot and killed his wife on January 3, 1974. Officer Terry Melloy of the Peoria Police Department was sent to investigate following Allen's call to the police. When asked by Melloy what happened, Allen replied, "I shot my wife." Allen then told Melloy that the gun was on the table inside the house, and that Mrs. Allen was hurt "pretty bad." Officer Melloy read Allen the Miranda warnings, which included the statement that "anything you say can and will be used against you in a court of law." Petitioner acknowledged that he understood his rights and made no further statements.
 
 
 5
 At trial, Allen contended that he had acted in self-defense. The prosecutor, over the objections of defense counsel, cross-examined Allen about his failure to tell his story to the police:
 
 
 6
 "Q: Would you explain that information you gave to Officer Terry Melloy concerning your fears for your life and efforts of self defense when he came up to the house after you called?"
 
 
 7
 The trial judge sustained defense counsel's objection to this question and instructed the jury to disregard it.
 
 
 8
 "Q: Now, Mr. Allen, when the police showed up pursuant to your call on January 3, 1974, at 431 West 7th in Peoria, and you talked to Officer Melloy, you never mentioned any fear for your life did you?
 
 
 9
 DEFENSE COUNSEL: Same Objection.
 
 
 10
 THE COURT: Overruled.
 
 
 11
 A: Would you repeat the question?
 
 
 12
 Q: When the police showed up at 431 West 7th on January 3, 1974 pursuant to your call, you never told them you were in fear of your life from your wife did you?
 
 
 13
 A: No.
 
 
 14
 Q: In fact, you never told any law enforcement officer this did you?
 
 
 15
 A: No, I didn't.
 
 
 16
 Q: In fact, the first statements regarding this are from the stand in this trial aren't they?"
 
 
 17
 Out of the presence of the jury, defense counsel objected to this line of questioning on the ground that it was improper for the prosecutor to question defendant about his refusal to make a statement, and asked the court to declare a mistrial. The court overruled the objection and denied the motion for a mistrial.
 
 
 18
 "Q: Would you repeat the question?
 
 
 19
 COURT REPORTER: In fact, the first statements regarding this are from the stand in this trial aren't they?
 
 
 20
 A: Yes."
 
 
 21
 The prosecutor also commented on Allen's silence during closing arguments to the jury:
 
 
 22
 Now, when by the way, did the defendant first say self-defense? Did he say this to officer Terry Melloy, I just shot my wife, I had to do it, she came at me with a knife in the kitchen! Did he say that? Did he say, she was going into her purse, I thought she had a gun, I had to shoot her! Or did he even say, I shot my wife in self-defense. No, none of these. He said very calmly, according to Officer Melloy, I just shot my wife, she is pretty bad, she is in there, the gun is on the table. In a calm way.
 
 
 23
 After he shot his wife five times and stood over her and sent the hammer home on an empty cylinder, did he then say, oh my God, I had to do it, I thought she was going for a gun. No, what he said was, she's dead now. The defendant could not say self-defense because there was no self-defense. The defendant is a cold blooded, brutal murderer.
 
 
 24
 At trial, conflicting evidence was presented on the question of self-defense. Petitioner testified that on the day of the shooting, Mrs. Allen got a butcher knife and a struggle ensued. He also alleged that just before he pulled out his gun and shot her, she had reached into her purse and started to get up; he stated that he thought she was trying to kill him. Mrs. Moore, who was in the house at the time of the shooting, testified that Mrs. Allen did not have her purse in the room at the time of the shooting.
 
 
 25
 Other testimony presented at trial indicated that Allen and his wife had previously made death threats against each other. Two witnesses testified that several days before the shooting, Mrs. Allen attacked her husband with a steak knife then a bottle.
 
 II
 
 26
 Petitioner contends that the prosecution's attempt to impeach his testimony by his prior silence violated the Fourteenth Amendment; he relies principally on Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The State asserts that the Supreme Court's decision in Jenkins v. Anderson, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), controls this case.
 
 A. Post-Arrest Silence
 
 27
 In Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), petitioners at their trial told an exculpatory story they had not told before to the police or prosecutor. On cross-examination, the prosecutor questioned them about their failure to give the explanation to police at the time of their arrest. The Court held that the use of petitioner's post-arrest silence for impeachment purposes violated the Due Process Clause of the Fourteenth Amendment. Id. at 619, 96 S.Ct. at 2245. The Court stated:
 
 
 28
 Silence in the wake of these (Miranda ) warnings may be nothing more than the arrestee's exercise of these ... rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested.... Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.
 
 
 29
 Id. at 617-18, 96 S.Ct. at 2244-45.
 
 
 30
 The district court found, and we agree, that the prosecutor's questions during cross-examination and remarks in closing arguments violated petitioner's due process rights. The State may not use a criminal defendant's silence after he has been given the Miranda warnings to impeach an exculpatory story brought forth later. To permit such a practice would be fundamentally unfair, as the Supreme Court found in Doyle, and would be too great a burden on a criminal defendant's exercise of his right to remain silent. Moreover, we agree with the district court that petitioner's silence was not necessarily inconsistent with his claim of self-defense. See United States v. Hale, 422 U.S. 171, 176, 95 S.Ct. 2133, 2136, 45 L.Ed.2d 99 (1975).[1]B. Pre-Arrest Silence
 
 
 31
 In Jenkins, petitioner testified at his trial for murder that he acted in self-defense. He was not arrested until two weeks after the slaying. The prosecutor cross-examined petitioner about his silence during the period before his arrest, attempting to impeach his testimony by showing that he would have spoken up sooner if he had in fact acted in self-defense. The Supreme Court held that the use of pre-arrest silence to impeach a criminal defendant's credibility does not violate the Fifth or Fourteenth Amendments. 447 U.S. at 238, 240, 100 S.Ct. at 2129, 2130.
 
 
 32
 We find that Jenkins does control the pre-arrest silence issue; if the prosecutor's questions on cross-examination and remarks in closing arguments had referred only to petitioner's silence prior to receiving his Miranda warnings, we would have been bound by Jenkins to conclude that no constitutional violation occurred. In the case at bar, however, the prosecutor's remarks were phrased broadly, without distinguishing between pre- and post-arrest silence.[2] Therefore, the fact that the questions may have permissibly referred in part to the pre-arrest silence does not alter the conclusion that the references to post-arrest silence were unconstitutional.
 
 III
 
 33
 The State argues that despite the fact that the prosecutor's questions referred impermissibly to post-arrest silence, we should affirm the conviction because the error was harmless. We cannot agree.
 
 
 34
 A constitutional error will not be found harmless unless the court determines that it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).[3] "(U)nless there is a reasonable probability that the improperly admitted (questions) contributed to the conviction, reversal is not required." Schneble v. Florida, 405 U.S. 427, 432, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972).
 
 
 35
 In the case at bar, it is possible that a juror might have considered the prosecutor's remarks about petitioner's silence in rejecting his self-defense claim. Further, petitioner's assertion of self-defense was not frivolous; he presented other witnesses who testified about prior attacks and threats against petitioner by his wife. Therefore, we cannot conclude that the error was harmless beyond a reasonable doubt.[4]
 
 
 36
 Accordingly, we affirm the decision of the district court.
 
 
 37
 PELL, Circuit Judge, dissenting.
 
 
 38
 I was a member of the original panel which unanimously affirmed the district court's grant of habeas corpus and adopted the opinion of the district court as the decision of this court. Under Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the result seemed clear. This is not true, however, now that we reconsider our judgment in the light of Jenkins v. Anderson, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), as we have been mandated to do by the Supreme Court. In my opinion the facts in this case, upon consideration in the light of Jenkins require a reversal of the district court's grant of habeas corpus. I therefore respectfully dissent.
 
 
 39
 When the case was originally before us, under Doyle I entertained the idea that we could not properly say under Chapman v. California, 386 U.S 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), that the error was harmless. Now the situation under Jenkins is different and I regard whatever minimal error remains in the prosecutor's conduct would properly be considered as harmless error.
 
 
 40
 The majority in Doyle made an express point of the fact that the state was not claiming in the circumstances of that case that the use of the silence for impeachment might have been harmless error. On the assumption that our high court did not needlessly insert superfluous language I take this reference as an indication that, as in any case of a constitutional error, such error may be harmless, dependent upon the circumstances of the particular case. I will refer to those circumstances later.
 
 
 41
 It must be kept in mind that under Jenkins, if this old case should now be retried, assuming that the Moores and the police officer are still living and are available as witnesses, the prosecution will be free to comment on pre-arrest silence. I feel confident that the prosecution will do so. The jury will know that when the police officer, Melloy, arrived at the scene, Allen did talk to him before a Miranda warning was given, and told him that he had shot his wife and that she was hurt "pretty bad," and that he did not say anything about having acted in his own defense. The prosecutor would be perfectly free under Jenkins to make comments during final argument to the effect that the natural thing would have been when the officer arrived for Allen to have told the officer that his wife had been after him with a knife and that he had to shoot her. We would not expect him to use terms of art, or that he would tell the policeman in haec verba that he was engaged in self defense, but on the other hand it would be wholly natural and probable if he in fact had been defending himself he would have made some minimal reference to the actual facts of self defense such as, "she came lunging at me with a butcher knife."
 
 
 42
 Unfortunately, in the case under review while all of the focus was on the initial contact with Officer Melloy and the conversation that did occur, all of which was before the Miranda warning, the prosecutor's questions could be considered sufficiently broad to include the post-Miranda period. In reading the transcript one cannot conceive, however, that the jury's real attention was directed other than at the silence at the time of the first contact by Officer Melloy when it would have been natural for Allen to have blurted out that his wife was after him with a knife. This is similar to the old res gestae situation on the admission of excited utterances. His silence after the Miranda warning would not have been surprising to the jury.
 
 
 43
 In Jenkins the majority opinion referred to the common law which "traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted. 3A J. Wigmore, Evidence § 1042, p. 1056 (Chadbourn rev. 1970)." 447 U.S. at 239, 100 S.Ct. at 2129.
 
 
 44
 Turning now to the evidence in this case, I do note that there is a possibility of some conflicting evidence on the question of self defense but upon analysis this strikes me as so meager as to make the claim frivolous. It is based principally upon Allen's own testimony and its only objective fortification is that a few days earlier there had been an incident in which the wife had grabbed a steak knife and at that time and subsequently had made some threats against the defendant. Looking at the incident in question, however, both the testimony of the only living eyewitness other than Allen and the clear conclusions to be drawn from the physical facts completely negate self defense. Without going into detail, the district court's opinion beginning at page four summarizes the factual situation. I note particularly that Allen shot his wife five times with a handgun, significantly inconsistent with self defense, and then tried to shoot her once more as she was lying on the floor. The gun was empty so the corpse was spared an extra round. Allen testified that his wife first attacked him with a butcher knife and that she was injured during that attack. The eyewitness, however, testified that she did not own a butcher knife and did not see a knife on the floor in the kitchen or in the living room. The eyewitness, Mrs. Moore, was Mrs. Allen's sister-in-law, and one could raise a question as to the objectivity of such a witness. I note, however, that both Mrs. Moore and her husband as defense witnesses, candidly testified as to the threats Mrs. Allen had made against her husband and also as to the steak knife incident. Further, as previously noted, Allen was calm when he talked to Officer Melloy.
 
 
 45
 The overall evidence to which I have adverted previously presents a powerful case of guilt and it would be indeed a strange jury that would find the claim of self defense on this evidence other than frivolous.
 
 
 46
 While I think we could reverse on harmless error for the reasons outlined in the evidence of the trial, certainly with the addition of the evidence permitted by Jenkins that Allen did not mention self defense in circumstances in which that fact would naturally be asserted, to wit, at the time the police officer first arrived and Allen was vocal, the guilt was overpowering and the meager, non-specific references to post-Miranda silence are harmless error. Finally, in considering this case under Jenkins, we should do so on the basis that what the jury heard in the first trial as to the failure to claim self defense up to the time of the Miranda warning was proper for it to hear. Insofar as there was evidence of non-proclaiming at a time subsequent to the Miranda warning this was merely cumulative.
 
 
 
 *
 The Honorable Donald P. Lay, Chief Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 The Court in Hale, although basing its decision on its supervisory power over federal courts rather than on constitutional grounds, noted that "(i)n most circumstances, silence is so ambiguous that it is of little probative force." 422 U.S. at 176, 95 S.Ct. at 2136. The Court found that the respondent in that case had been given the Miranda warnings and that, therefore, "his failure to offer an explanation during the custodial interrogation can as easily be taken to indicate reliance on the right to remain silent as to support an inference that the explanatory testimony was a later fabrication." Id. at 177, 95 S.Ct. at 2137
 
 
 [2]
 In its brief, the State concedes that "the prosecutor in cross-examining the defendant did not always phrase his questions concerning defendant's failure to tell his self-defense story in such a way that they clearly referred only to the period before his arrest .... Yet this should not be fatal to the defendant's conviction because the prosecutor was clearly adverting to the defendant's state of mind before his arrest ...." We disagree; it is clear from the questions that the prosecutor was referring to both petitioner's pre- and post-arrest silence
 
 
 [3]
 The Court in Doyle did not consider whether the error in that case was harmless because the State failed to raise the issue. 426 U.S. at 619-20, 96 S.Ct. at 2245
 
 
 [4]
 We note further that the district judge, who heard the testimony and closing arguments, ruled that the error was not harmless