UNITED STATES of America, ex rel.,
Larry SAULSBURY,
Petitioner-Appellant,
v.

James GREER, Warden, Menard, Michael Lane, Director of the Department of Corrections, Respondents-Appellees.

No. 82–1433.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 28, 1982.

Decided March 14, 1983.

Certiorari Denied May 16, 1983.
See 103 S.Ct. 2104.

Gary R. Peterson, Springfield, Ill., for petitioner-appellant.

Michael V. Accettura, Asst. Atty. Gen., Springfield, Ill., for respondents-appellees.

Before WOOD and POSNER, Circuit Judges, and MORAN,* District Judge.

MORAN, District Judge.

Larry Saulsbury appeals from the denial of his petition for a writ of habeas corpus. One basis for his petition and the sole basis for this appeal is his contention that he was denied a fair trial by the prosecutor's references in cross-examination and closing argument to petitioner's post-arrest silence. That contention was rejected by the Appellate Court of Illinois, Fourth District; *People v. Saulsbury,* 55 Ill.App.3d 663, 13 Ill. Dec. 470, 371 N.E.2d 165 (4th Dist.1977), petition for leave to appeal to the Illinois Supreme Court denied, and by the District Court, and we reject it here.

Petitioner was convicted of murder. Following a quarrel over personal property in one apartment, the deceased resumed the quarrel at Saulsbury's apartment and Saulsbury stabbed him. Defendant contended, and the jury disbelieved, that the stabbing was in self-defense.

When defendant was on the stand in his own defense his counsel asked him why he did not volunteer any explanation of the affray at the time of arrest. Saulsbury replied that the sheriff had read him his rights, stating that what he said could be used against him, and, since Saulsbury was on parole, he did not think the sheriff would believe his explanation. On cross-examination the prosecutor, by three questions, elicited the same response. He then went on to question defendant as to whether he volunteered a statement several hours later, when, while in jail, he learned from the sheriff that he was being charged with murder.

Q. He [the sheriff] didn't specifically tell you that Cooper was dead but you obviously assumed that from the charge?

A. Yes.

Q. Now, at that point, did you talk to the Sheriff?

A. No.

(R. 782).

During closing argument the prosecutor vigorously argued that the reason defendant gave for not coming forward with his explanation the night of the stabbing could not be the reason he failed to offer it the next morning after the victim had died and defendant was in jail, charged with murder.[1] The thrust of the argument was that

---

* The Honorable James B. Moran, United States District Judge for the Northern District of Illinois, sitting by designation.

1. "Now, it's also uncontested that the defendant never said a word about the bottle, didn't say a word about self-defense even after he found out he was charged with murder, that Cooper was dead and he was going to be charged with murder." (R. 837)

\* \* \* \* \* \*

"We trust you gentlemen and ladies recall where he [the defendant] was when he was arrested. He was sitting at Liz Beatty's. Remember his testimony? Sheriff came in—I believe he referred to him as "Bill"—came in,

gave my *Miranda* warning, but he didn't talk to him. Okay, at that point he doesn't have to voluntarily go to the Sheriff's office. The Sheriff's got him. Wants to make a clean breast of things. What's a better time?" (R. 848–849)

\* \* \* \* \* \*

"The next morning I believe the defendant testified was 8:00 o'clock when he first found out that John Cooper was dead and he was going to be charged with murder. Well what else can happen to you? You, ladies and gentlemen, are reasonable citizens. Maybe none of you have

the jury should not believe the defendant's story because, by then, someone charged with murder would have claimed self-defense if in fact that is what had happened. Defendant did not object to the cross-examination or the closing argument until post-trial motions. The Illinois Appellate Court, however, considered the issue under the Illinois "plain error" doctrine and held that the cross-examination and closing argument were permissible.

Saulsbury contends that the District Court followed an overly expansive view of Illinois law which allows the prosecution to inquire about otherwise inadmissible prejudicial evidence if the defendant himself testifies concerning such evidence on direct examination. The State contends that we should not consider matters to which there were no objections in the absence of a showing of cause and actual prejudice. *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Both contentions mistake the effect of the Illinois appellate ruling. The Illinois courts have ruled that the cross-examination and closing argument in this case were within the permitted bounds of Illinois law. They have not refused to entertain the issue because of any failure to object, and therefore the decent respect for state procedural requirements underlying *Frady* or, more

properly, *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), do not govern here.

*Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), as both parties recognize, has considerable relevance to the issue here, although it is not the complete answer each contends. In *Doyle,* the Supreme Court struck down prosecutorial cross-examination about post-arrest silence when the defendant had been given *Miranda* warnings. It there considered cross-examination respecting the defendant's silence "at the time of arrest and receiving *Miranda* warnings," *id.* at 619, 96 S.Ct. at 2245, fundamentally unfair because that silence was, in view of those warnings, insolubly ambiguous. The Court relied upon a due process, and not a Fifth Amendment, analysis.

Although Illinois has long followed the rule that post-arrest silence cannot be the subject of cross-examination and comment, *see People v. Lewerenz,* 24 Ill.2d 295, 181 N.E.2d 99 (1962), the reconciliation of the need for full cross-examination with the protections of the Fifth Amendment and the due process clause have been in the federal courts consistently troublesome. In *Raffel v. United States,* 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926), the Court

ever been on parole or have the same reasons to be fearful of law enforcement authorities that Mr. Saulsbury might. What else can happen to you once you're charged with murder? You're in jail. You're not going to get away. If you have anything to tell anyone at that point, whether you trust law enforcement people or not, that's going to help you, you're going to tell it to them. Did he say anything at 8:00 o'clock the next morning? Nothing." (R. 849)

\* \* \* \* \* \*

"[A]fter he's arrested, after they tell him he's charged with murder he still lets them stumble around in the dark." (R. 850)

\* \* \* \* \* \*

"He has a constitutional right his counsel said not to say anything. He exercised that constitutional right. That's true. He also has a constitutional right not to testify. He chose not to exercise that constitutional right. He sat up there and testified. The difference? Maybe at this point he's convinced hey, if I don't say anything I don't have any chance at all. What

we ask you to do ladies and gentlemen, we're not certainly choosing to attack the defendant for exercising his constitutional rights, is to think what you would have done. You may never have been on parole, but after all this doesn't matter at all. You have not been arrested. It's not a matter that you've been arrested. You're not going anywhere anyway. The next morning you have been charged with murder or informed you're going to be charged with murder. I don't care what you say about parole or anything else at that point in time you're going to tell what's going to help you." (R. 889)

\* \* \* \* \* \*

"[W]e would like to leave you with the thought that in order to believe Larry Saulsbury the defendant, and you have to believe him or he's guilty ... you have to disbelieve that an innocent party would have acted the same way that Mr. Saulsbury did in not telling anyone about his defense until he took the stand here for trial even after he had been arrested. You have to disbelieve all of those things." (R. 893)

held, without dissent, that a defendant who testified in his second trial, after choosing not to testify in his earlier trial in which the jury had failed to reach a verdict, could be cross-examined about his failure to testify in the first proceeding. Noting that a defendant who takes the stand subjects himself to the full scope of relevant cross-examination, the Court concluded that the defendant's earlier failure to deny or explain evidence of incriminating circumstances known to him permitted an adverse inference.

Subsequent decisions undermined *Raffel*. In *Grunewald v. United States,* 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), a unanimous Court overturned a federal conviction because the defendant, who testified in his own defense, was questioned about his invocation of his privilege before the grand jury. The defendant had, before the grand jury, repeatedly insisted that he was innocent and that he was asserting his privilege solely on advice of counsel. For that reason and because of the inquisitorial and secret nature of the grand jury, before which the defendant was compelled to appear without counsel and with knowledge that he was a target, a majority of the Court considered too attenuated the inference that defendant's earlier silence reflected upon the credibility of his later testimony when balanced against the prejudice of possible impermissible use of the evidence by the jury. Applying, in effect, the balancing test of present Rule 403 of the Federal Rules of Evidence, and mindful of the "grave constitutional overtones," *id.* 353 U.S. at 423, 77 S.Ct. at 983, the Court exercised its supervisory powers over the administration of federal criminal justice. It ruled that, in the circumstances of that case, the cross-examination was prejudicial error. Four members of the Court concurred, relying squarely on a violation of the Fifth Amendment and asserting that *Raffel* should be overruled.

Four years later, in *Stewart v. United States,* 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961), the Court explained that *Raffel* did not mean that prior silence could always be used to impeach; rather, in order for prior silence to be used as an offensive weapon in federal prosecutions, it had to be, as it was not in *Stewart* and in *Grunewald,* inconsistent with the subsequent testimony. That decision rested, apparently, upon the Fifth Amendment and not upon the exercise of supervisory powers. Turning to the implications of silence in state prosecutions, the Court struck down the California comment rule in *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), relying squarely on Fifth Amendment grounds. There, where the defendant did not testify, both court and prosecutor, as expressly authorized by the California Constitution, commented upon the defendant's failure to deny or explain matters within his knowledge. The Court rejected such commentary as an impermissible penalty for the exercise of a constitutional right. Thus, at least in the situation where the defendant has exercised his Fifth Amendment rights absolutely (declining to testify in his defense), "[w]hat the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another." *Id.* at 614, 85 S.Ct. at 1233.

In *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), the Court once again examined the problem of prosecutorial comment on prior silence where a defendant chooses to take the stand at trial. The court, pursuant to its supervisory powers, upheld the reversal of a conviction after a trial in which the defendant had been asked by the prosecutor why he had not given his alibi during police interrogation. Again the Court used a balancing test and found that the circumstances closely paralleled those in *Grunewald.* As in *Grunewald,* the Court considered the defendant's silence during interrogation ambiguous, this time because of the immediately preceding *Miranda* warnings he had received, the possible intimidating effect of secretive in-custody interrogation, the defendant's repeated assertions of innocence and the defendant's knowledge that the police considered him to be a primary suspect. *Raffel* was relegated to a footnote noting that,

since *Hale* did not reach any constitutional claims, it was unnecessary to decide whether *Raffel* had survived subsequent decisions. *Doyle* followed a year later, resting on constitutional grounds and pointing out that *Hale* had noted that silence at the time of arrest may be inherently ambiguous even apart from the effect of *Miranda* warnings. Only the dissent referred to *Raffel.* Justice Stevens there traced the subsequent assault upon the *Raffel* rationale but considered that case to have some lingering vitality.

Finally, in *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), the Court resuscitated *Raffel.* The defendant, who first turned himself in two weeks after a stabbing, then claimed self-defense. In the state prosecution the defendant took the stand and his pre-arrest silence became the subject of both cross-examination and comment. Upholding the conviction, the Court drew a distinction between pre-arrest and post-arrest silence and emphasized that in *Doyle* the failure to speak out closely followed the *Miranda* warnings. In at least two cases since then, in *United States ex rel., Allen v. Franzen,* 659 F.2d 745 (7th Cir.1981), *cert. denied,* 456 U.S. 928, 102 S.Ct. 1975, 72 L.Ed.2d 444 (1982) and *United States ex rel., Smith v. Franzen,* 660 F.2d 237 (7th Cir.1981), vacated and remanded, 457 U.S. 1102, 102 S.Ct. 2898, 73 L.Ed.2d 1310 (1982) this court (and both times a divided court) has followed that distinction in overturning state convictions, relying upon the *Doyle* due process analysis when the defendant was questioned about post-arrest silence. The subsequent history of those cases from this circuit illustrates the nexus in *Doyle* between *Miranda* warnings and post-arrest silence. *United States ex rel. Smith* was vacated and remanded in light of *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), where the Supreme Court held *Doyle* inapplicable to post-arrest silence when no *Miranda* warnings had been given, and remains pending here.

This short journey through time illustrates the difficulties of balancing the need for full development of the facts through vigorous cross-examination against the pro-

tection of the Fifth Amendment privilege. Clearly, the state cannot comment upon silence when the defendant, in the exercise of his privilege, chooses not to testify at all. Clearly, the state can cross-examine and comment when a defendant, prior to his arrest, did not come forward with the exculpatory story of his trial testimony when he had both the opportunity and good reason to do so. Clearly, a defendant who remains silent for some period after he has been given *Miranda* warnings cannot have that silence adversely affect him. As in *Johnson v. United States,* 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943), there is an element of induced detrimental reliance, of fundamental unfairness, when a person is invited to exercise a privilege, only to find that the exercise of the privilege is cited as the reason he should subsequently be disbelieved. *See Fletcher v. Weir, supra.*

If, in this case, Saulsbury, in the absence of any direct examination respecting his silence, had been questioned about his failure to volunteer his self-defense explanation the following morning, the decision would be indeed difficult. The Court in *Grunewald,* for instance—albeit in the exercise of its supervisory powers—refused to permit questioning about silence long after arrest. The decisions have, at the same time, recognized that silence well subsequent to any *Miranda* warnings pose different considerations, *Doyle v. Ohio,* 426 U.S. at fn. 6, 96 S.Ct. at fn. 6, presumably because "[s]ilence gains more probative weight where it persists in the face of accusation. . . ." *United States v. Hale,* 422 U.S. at 176, 95 S.Ct. at 2136.

Here, however, it was the defense which initiated the inquiry. As pointed out by Justice Stevens in his dissent in *Doyle,* 426 U.S. at 626, 96 S.Ct. at 2248, the availability of the *Miranda* warning puts the defendant in a better position than if he had received no warning, should he use that as the reason, just as defendant did here. *Miranda* warnings were given as the reason for that silence. Once that reason was solicited upon direct examination it was not fundamentally unfair for the prosecution, upon

cross-examination, to attack the credibility of that explanation by eliciting testimony that the defendant had failed to come forward with his exculpatory explanation long after the *Miranda* warnings and after circumstances had made the need for such an explanation, if it existed, far more compelling.

The defendant was not content to leave it to what the jury might infer, without help from anyone. The direct examination, by assigning a reason for silence immediately after arrest, chose to indicate to the jury that silence had probative weight and removed that subject from the realm of insoluble ambiguity about which there could be no comment. Having ventured that far, the defense could not erect a constitutional barrier against the state exploring the soundness of that explanation by measuring it against the defendant's subsequent failure to assert it the following morning, when the accusations had become far more serious.

The prosecution's closing argument is, however, particularly troublesome because of its ambiguity. Just as in *Doyle v. Ohio, supra,* the comments upon defendant's silence were a permissible attack upon credibility and also an impermissible attack upon innocence. "Comment on the lack of credibility of the defendant is plainly proper; it is not proper, however, for the prosecutor to ask the jury to draw a direct inference of guilt from silence—to argue, in effect, that silence is inconsistent with innocence." *Id.* 426 U.S. at 634–35, 96 S.Ct. at 2252–53 (*Stevens, J., dissenting*). It is an attack upon defendant's credibility, but that attack is intertwined with the suggestion that an innocent person would have come forward earlier. We believe, however, that Justice Stevens' conclusion in *Doyle* is equally applicable here:

> ... But since the two inferences—perjury and guilt—are inextricably intertwined because they have a common

source it would be unrealistic to permit comment on the former but to find reversible error in the slightest reference to the latter. In the context of the entire argument and the entire trial, I am not persuaded that the rather sophisticated distinction between permissible comment on credibility and impermissible comment on an inference of guilt justifies a reversal of these state convictions.

*Id.* at 635–36, 96 S.Ct. at 2253.

The District Court's judgment denying habeas corpus is affirmed.