# United States Court of Appeals
## For the First Circuit

No. 14-1580

STEPHEN CRONIN,

Petitioner, Appellant,

v.

COMMISSIONER OF PROBATION,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Barron, Selya and Stahl,
Circuit Judges.

Edward Crane, with whom Law Office of Kevin Crane was on brief, for appellant.
Todd M. Blume, Assistant Attorney General, Criminal Bureau, with whom Martha Coakley, Attorney General, was on brief, for appellee.

April 7, 2015

**SELYA, Circuit Judge.** In Doyle v. Ohio, 426 U.S. 610 (1976), the United States Supreme Court proscribed the prosecution's use of a defendant's post-Miranda silence in a criminal case. See id. at 619. This state habeas case implicates that proscription. After careful consideration, we conclude that even if the Massachusetts Appeals Court (MAC) misapplied the Doyle rule — a matter on which we take no view — any comment on the petitioner's silence was harmless when considered in the context of the trial as a whole. Consequently, we affirm the district court's denial of habeas relief.

## I.  BACKGROUND

We briefly rehearse the factual and procedural background. In May of 2009, petitioner-appellant Stephen Cronin was charged in a Massachusetts state court with operating a motor vehicle under the influence of alcohol, third offense, and negligent operation of a motor vehicle. See Mass. Gen. Laws ch. 90, § 24(1)(a)(1), (2)(a). At trial, Officer David Jordan testified that he witnessed a van veer into a motel parking lot in Braintree, drive across a traffic island, and twice stop abruptly before parking haphazardly. Officer Jordan approached the van on foot, keeping in view the driver (whom he identified as the petitioner). Officer Brian Eng, who was called to the scene to provide backup, testified that the petitioner stated that he was coming from Jamaica Plain and had consumed a few cocktails.

Following a failed field sobriety test, the petitioner was arrested. At some point during the booking process, the petitioner was given written <u>Miranda</u> warnings, <u>see</u> <u>Miranda</u> v. <u>Arizona</u>, 384 U.S. 436, 444 (1966), and invoked his right to remain silent.

The petitioner testified to a starkly different version of the relevant events. He claimed that he had not been driving the van; rather, Michelle Sires (his quondam roommate) drove the van back to the motel after running an errand. The petitioner had been drinking beer at the motel for most of the day and became involved with the police, he said, only when he went to the van that Sires had parked to retrieve a pack of cigarettes from the glove compartment. Officer Jordan confronted the petitioner just as he exited the driver's side door, cigarettes in hand. The petitioner further testified that he told the officers that he was not the driver.

After eliciting this testimony, defense counsel asked: "Did you ever tell [the officer] that your friend Michelle was actually the driver of the van?" The petitioner replied in the negative. When defense counsel asked "Why didn't you do that?" the petitioner responded, "Because she had a couple of warrants on her."

The prosecutor's cross-examination began as follows:

> Q: Good afternoon. So you never told the officers anything about what you're telling us today?
> A: What's that?

Q: About Michelle.
A: No. No.
Q: You never told either of these officers?
A: No.
Q: You never told them during the course of your booking?
A: No.
Q: You thought you were arrested wrongly for a crime you didn't do?
A: Yes.
Q: But you never told the police anything about this over the hours you were with them?
A: No.

Michelle Sires did not testify (according to the petitioner, she had moved to Florida shortly after his arrest).

In his closing argument,[1] the prosecutor pointed out a number of inconsistencies between the officers' account and that of the petitioner, and then stated,

> He never said anyone else was driving. He said nothing about this Michelle individual . . . . Michelle never came out . . . if this person even exists; if she does exist, if she was even there . . . . He's concerned about this other person who has warrants; and yet, he's getting arrested, and he says nothing. Does that make any sense that someone would actually do that in . . . some sort of . . . chivalrous act that he'd do for this other individual?

_____

[1] While the petitioner did not make a contemporaneous objection to either the prosecutor's line of questioning or closing argument, he did move in limine to preclude reference to his "lack of cooperation," citing Doyle. The trial justice denied this motion prior to trial. Under Massachusetts practice, the denial of a pretrial motion in limine seeking to preclude the introduction of evidence on constitutional grounds is reviewable without further objection at trial. See Commonwealth v. Whelton, 696 N.E.2d 540, 543 (Mass. 1998).

In her summation, defense counsel asserted that the petitioner "told the officers that he was not driving, but he did not tell them that Ms. [Sires] was driving. He did not tell them because she had warrants out for her arrest, and he did not want her to get in trouble." She suggested that "[t]he only thing that Mr. Cronin may be guilty of is misguided chivalry."

The jury rejected the petitioner's exculpatory tale and found him guilty. The trial justice sentenced the petitioner to a term of imprisonment followed by a term of probation.

The petitioner appealed. Pertinently, he complained that the prosecutor's cross-examination and closing argument constituted constitutionally forbidden commentary on his post-Miranda silence. The MAC spurned this plaint, see Commonwealth v. Cronin, 978 N.E.2d 592 (Mass. App. Ct. 2012) (table), full text at 2012 WL 6027750, and the Supreme Judicial Court summarily denied the petitioner's application for further appellate review, see Commonwealth v. Cronin, 982 N.E.2d 1188 (Mass. 2013) (table).

The petitioner repaired to the federal district court in search of habeas relief, see 28 U.S.C. § 2254, naming as the respondent the Commissioner of Probation of the Commonwealth of Massachusetts. The district court rebuffed his habeas petition, see Cronin v. Comm'r of Prob., No. 13-11169, 2014 WL 1784056, at *6 (D. Mass. May 2, 2014), but issued a certificate of appealability, see 28 U.S.C. § 2253(c), limited to the question of whether the

MAC's decision was contrary to or an unreasonable application of the _Doyle_ rule.  This timely appeal followed.  While the petitioner has fully served the incarcerative portion of his sentence, he remains on probation and, thus, in custody for federal habeas purposes.  _See_ 28 U.S.C. § 2254(a); _Jackson_ v. _Coalter_, 337 F.3d 74, 78-79 (1st Cir. 2003).

## II.  ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, governs federal habeas review of state-court convictions.  _See_ _id._ § 104, 110 Stat. at 1218-19 (codified as amended at 28 U.S.C. § 2254).  Under the AEDPA's peculiarly deferential standards, error by a state court, without more, is not enough to warrant federal habeas relief.  _See_ _McCambridge_ v. _Hall_, 303 F.3d 24, 36 (1st Cir. 2002) (en banc).  The AEDPA contemplates increments of error: to warrant habeas relief, the last reasoned state-court decision must be not only erroneous but also "contrary to," or infected by "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); _see_ _Ylst_ v. _Nunnemaker_, 501 U.S. 797, 804 (1991).  In conducting this inquiry, state-court factual findings are presumed correct, and that presumption may be overcome only by clear and convincing proof.  _See_ 28 U.S.C. § 2254(e)(1); _Ouber_ v. _Guarino_, 293 F.3d 19, 27 (1st Cir. 2002).

Under the first furculum of the AEDPA regime, a decision is contrary to clearly established federal law either if it announces a rule of law that directly contradicts existing Supreme Court precedent or if the state court has reached a different result than the Supreme Court on materially indistinguishable facts. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Foxworth v. St. Amand, 570 F.3d 414, 424 (1st Cir. 2009). Under the second furculum, an unreasonable application of clearly established federal law occurs when:

> the state court correctly identifies the governing legal principles, but (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply.

Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007).

That these standards are strict is no accident. The Supreme Court has admonished that federal habeas relief is to be granted only sparingly and is reserved for cases in which "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Harrington v. Richter, 131 S. Ct. 770, 786 (2011); see Janosky v. St. Amand, 594 F.3d 39, 47 (1st Cir. 2010) ("To justify federal intervention, the state court's application must be both incorrect and unreasonable."). And even if the state court's decision fails

-7-

this deferential test, federal habeas relief will not follow unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 638 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

With this analytic framework in place, we turn to the case at hand. Our review of the district court's disposition of a habeas petition is de novo. See Lynch v. Ficco, 438 F.3d 35, 44 (1st Cir. 2006).

Here, the last reasoned state-court decision is that of the MAC. The petitioner submits that the MAC's decision was both contrary to and an unreasonable application of clearly established federal law because the prosecutor's questions and comments about his failure to mention Michelle at or after the time of arrest contravened Doyle and, therefore, abridged his right to due process.[2]

Under the AEDPA, clearly established federal law is that articulated by the Supreme Court, not that articulated by lower federal courts. See 28 U.S.C. § 2254(d)(1); Renico v. Lett, 130 S. Ct. 1855, 1865-66 (2010). Both sides acknowledge that the clearly

---

[2] The petitioner concedes that no due process violation occurs when a prosecutor uses a defendant's pre-Miranda silence to impeach his trial testimony. See Fletcher v. Weir, 455 U.S. 603, 607 (1982) (per curiam); Jenkins v. Anderson, 447 U.S. 231, 240 (1980). For present purposes, we assume (favorably to the petitioner) that at least some of the questions and comments at issue were directed at the petitioner's post-Miranda silence.

-8-

established federal law governing this claim derives from the Supreme Court's decision in Doyle. There, the defendants claimed for the first time at trial that they had been framed. See 426 U.S. at 612-13. The state courts permitted the prosecution to impeach this claim by asking why the defendants had not related the frame-up story to the authorities at the time of arrest. See id. at 613-16. The defendants argued that this tactic violated their constitutional rights, and the Supreme Court agreed. See id. at 616, 619.

The Court began by explaining that the Miranda warnings convey an implicit assurance to anyone who receives them that "silence will carry no penalty." Id. at 618. Citing this implicit assurance, the Court held that the prosecution's use of a defendant's post-Miranda silence for impeachment purposes was "fundamentally unfair" and, thus, offended the Due Process Clause. Id. at 618-19. "[T]he unfairness occurs," the Court explained, "when the prosecution, in the presence of the jury, is allowed to undertake impeachment on the basis of what may be the exercise of [the] right [to remain silent]." Id. at 619 n.10; see Wainwright v. Greenfield, 474 U.S. 284, 292 (1986) ("The point of the Doyle holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony."). The Court reasoned that "every post-arrest silence

is insolubly ambiguous" because "[s]ilence in the wake of [Miranda] warnings may be nothing more than the arrestee's exercise of these Miranda rights."  Doyle, 426 U.S. at 617.

Viewed against this backdrop, we can swiftly dispose of the petitioner's assertion that the MAC's decision in this case was contrary to Doyle.  Although the contested cross-examinations in each case bear a family resemblance to one another, the direct examinations were quite different.  Unlike in Doyle, the petitioner testified at some length on direct examination about his statements to the police, including his claim of innocence at or around the time of his arrest.  He tried to bolster his tale by offering an explanation for his failure to disclose the actual driver's identity at an earlier time.  This stands in marked contrast to Doyle, where the defendants did not raise — much less affirmatively explain — their post-arrest silence on direct examination.

In upholding the petitioner's conviction, the MAC relied on this distinction: it noted that the petitioner himself had brought up the subject of his post-arrest silence and tried to wield it affirmatively in marshaling his defense.  It therefore concluded that the prosecution was entitled to cross-examine him "as to his postarrest silence because [his] explanation for his silence was the basis for his defense."  Cronin, 2012 WL 6027750, at *1.  The petitioner's use of silence as a sword rather than a shield sufficiently distinguishes this case from Doyle to defeat a

claim that the MAC's decision is contrary to clearly established federal law.  See Williams, 529 U.S. at 406.

The more vexing question is whether the MAC unreasonably applied Doyle either by construing it in an objectively unreasonable manner or by refusing to extend it to the facts at hand.  In this regard, the petitioner insists that the MAC misapprehended the limits that Doyle placed on the scope of cross-examination after a defendant opens the door by affirmatively raising the fact of his silence.

The petitioner concedes that his "introduction and explanation of his silence opened the door for the prosecutor to argue that this explanation was not credible," but contends that the prosecutor transgressed the letter (or at least the spirit) of Doyle when he "argued that the [petitioner's] silence was itself inconsistent with innocence."  Appellant's Br. at 17-18.  At oral argument, the petitioner identified a single sentence of the prosecutor's cross-examination as the embodiment of this transgression: "But you never told the police anything about this over the hours you were with them?"  In context, the meaning of "this" is ambiguous: it might refer, as the Commonwealth contends, to the petitioner's testimony about Michelle (a concededly permissible inquiry).  But it also might refer, as the petitioner contends, to the petitioner's belief that he was "arrested wrongly for a crime [he] didn't do" (arguably a Doyle violation).

-11-

We need not resolve this dispute. Even were we to conclude that a <u>Doyle</u> error occurred and that the MAC faltered in this respect — matters upon which we take no view — the petitioner's cause would not be advanced. We explain briefly.

For an improper question or comment to warrant relief under the AEDPA, the question or comment must have had a "substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht</u>, 507 U.S. at 637 (quoting <u>Kotteakos</u>, 328 U.S. at 776). Here, as in <u>Brecht</u>, the evidence of guilt "was, if not overwhelming, certainly weighty." <u>Id.</u> at 639. The Commonwealth offered competent evidence that the petitioner was seen driving the van erratically, failed a field sobriety test, and admitted to police that he was returning from Jamaica Plain (where he had consumed a few cocktails). While a reasonable jury might have accepted the petitioner's version of events, the jury in this case surely was entitled to reject that version in favor of the officers' account.

In all events, the prosecutor's ambiguous question on cross-examination constituted, at most, a single misstep among extensive and permissible references to the petitioner's silence. As the petitioner conceded at oral argument, nearly all of the prosecutor's references to the petitioner's silence were plainly directed at the credibility of the petitioner's late-blooming story about Michelle. <u>See</u> <u>United States ex rel. Saulsbury</u> v. <u>Greer</u>, 702

-12-

F.2d 651, 655-56 (7th Cir. 1983). Furthermore, the record does not reveal the timing of the Miranda warnings given to the petitioner. Consequently, many (if not all) of these references can be reasonably understood as comments on pre-Miranda silence, which are not constrained by Doyle. See Fletcher v. Weir, 455 U.S. 603, 606 (1982) (per curiam); Jenkins v. Anderson, 447 U.S. 231, 240 (1980). It follows that the jury knew from admittedly proper evidence (some of which was generated by the petitioner himself) about the petitioner's silence and doubtless would have drawn its own conclusions — favorable or otherwise — about the significance of that silence. Silhouetted against this background, the prosecutor's ambiguous reference to the petitioner's post-Miranda silence, even if proscribed, was "in effect, cumulative," and thus harmless. Brecht, 507 U.S. at 639.

We think, too, that the prosecutor's closing argument mitigated any possible bevue in his cross-examination. The thrust of the argument was that no one is so chivalrous as to refrain from pointing the finger at the real culprit when doing so would head off a wrongful arrest: if Michelle really existed and if she was the driver, her outstanding warrants were not a credible reason for failing to mention her to the police. This was a permissible line of argument, and likely steered the jury's attention away from a direct inference of guilt from silence and toward a permissible

inference that the professed reason for the petitioner's silence (misguided chivalry) was incredible.

In the last analysis, impeachment of one part of a defendant's testimony (his ostensible justification for remaining silent) has a natural tendency to encourage the jury to discredit the rest of his testimony (including his claim of innocence). See Saulsbury, 702 F.2d at 656. To the extent that an inference that the petitioner's explanation was bogus necessarily bled into an inference that his silence undercut his claim of innocence, we are on this record "not persuaded that the rather sophisticated distinction between permissible comment on credibility and impermissible comment on an inference of guilt justifies a reversal of th[is] state conviction[]." Doyle, 426 U.S. at 636 (Stevens, J., dissenting); see Saulsbury, 702 F.2d at 656 (adopting this reasoning).

We need go no further. Under the Brecht standard, federal habeas relief in unavailable to the petitioner unless he can show "actual prejudice" from the purported Doyle violation. Brecht, 507 U.S. at 637. Seen in the setting of the trial as a whole, he has failed to clear that high bar. Accordingly, the district court did not err in denying habeas relief.


**Affirmed.**