# United States Court of Appeals
## For the First Circuit

No. 18-1862

JOSENER DORISCA,

Petitioner, Appellant,

v.

RAYMOND MARCHILLI,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Howard, Chief Judge,
Thompson and Barron, Circuit Judges.

Andrew S. Crouch for appellant.
Thomas E. Bocian, Assistant Attorney General, with whom Maura Healey, Attorney General of Massachusetts, was on brief, for appellee.

October 23, 2019

**THOMPSON**, **Circuit Judge**.     After a jury convicted Petitioner Josener Dorisca ("Dorisca") of second-degree murder, he was sentenced to life in prison with the opportunity of parole after fifteen years.  When his state court appeals were denied, he turned to the federal court:  seeking a writ of habeas corpus, 28 U.S.C. § 2254, in the United States District Court for the District of Massachusetts, he alleged a violation of his right to confrontation and a violation of due process.  The district court denied the petition, and now before this court, Dorisca challenges that dismissal.  After due consideration, and bound by the tight (to say the least) parameters of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we affirm.

## BACKGROUND

As we lay out the relevant facts and travel, we are mindful that, "[w]hen we consider a state conviction on habeas review, we presume the state court's factual findings to be correct."  Hensley v. Roden, 755 F.3d 724, 727 (1st Cir. 2014) (citing Abram v. Gerry, 672 F.3d 45, 46 (1st Cir. 2012)).  Where the highest state court -- in this case, the Massachusetts Supreme Judicial Court -- has denied review, we are to "look through to the last reasoned decision" issued by the Massachusetts Appeals Court ("MAC").  King v. MacEachern, 665 F.3d 247, 252 (1st Cir. 2011) (quoting Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010)).  So the factual narrative below is derived from the

decision of the MAC, Commonwealth v. Dorisca, 42 N.E.3d 1184 (Mass. App. Ct. 2015), and the district court's decision, Dorisca v. Marchilli, No. CV 17-10376-FDS, 2018 WL 3974784, at *1 (D. Mass. Aug. 20, 2018), which drew from the MAC's decision too.

Dorisca and Bensney Toussaint ("Toussaint") attended a June 8, 2008 graduation cookout in Brockton, Massachusetts, and that's where the ultimately deadly physical altercation between the two men went down. Toussaint was romantically involved with the mother of Dorisca's two children at the time, and Dorisca and Toussaint had been involved in at least one previous dust-up. Toussaint instigated a physical fight with Dorisca, and the ensuing brawl ended with Toussaint on the ground with multiple gunshots to the chest and head. His wounds proved deadly -- Toussaint was taken to a nearby hospital, but was pronounced dead upon arrival.

Dorisca bolted, leaving Massachusetts and hiding out in Florida for two and a half years before being arrested on unrelated charges in 2011 (which led to the discovery of the outstanding warrant for his arrest in Massachusetts).

**Discovery, Trial, Conviction, and Appeals**

Dorisca was charged with first-degree murder, and the facts underpinning his claims before us transpired over the course of the weeks leading up to trial, during trial, and in closing arguments, so we next provide an overview of those happenings (with additional detail to follow later).

Two months out from trial, the Commonwealth moved to continue because one of its witnesses, medical examiner Dr. Kimberley Springer ("Dr. Springer"), would be on maternity leave as of the scheduled date of the trial and, as a result, would not be able to testify at trial. The trial judge denied the motion (without prejudice), then instructed the Commonwealth to find a substitute witness. Within a matter of weeks, the Commonwealth moved for a continuance on a new, but related basis: the digital photographs from Toussaint's autopsy apparently had been corrupted, and they were unavailable for examination by a substitute medical examiner. Like the motion before it, that one was denied without prejudice, this time to give Dorisca time to decide whether he would waive his confrontation clause rights, which he ultimately declined to do. So the Commonwealth moved to conduct a deposition of Dr. Springer. The motion was allowed, and Dr. Springer was deposed on videotape in a courtroom before the trial judge.[1] Dorisca's attorney was present and had an opportunity to ask questions.

The case proceeded to trial in March of 2013, and five days into it, the Commonwealth moved to introduce the videotaped deposition of Dr. Springer into evidence. Based on the Commonwealth's report four days earlier that Dr. Springer had gone

---

[1] We'll discuss the substance of her deposition testimony later.

into labor, the trial judge found that Dr. Springer was unavailable to testify, and -- over Dorisca's objection as to the doctor's unavailability -- allowed the videotaped deposition to be played for the jury.  This witness-availability saga forms the basis for the first of Dorisca's habeas arguments now before us.

Next up, closing arguments, during which the prosecutor made two misstatements.  These misstatements (and the trial judge's handling of them) constitute the second basis for Dorisca's appeal.  First misstatement:

> You heard [Dorisca's] testimony; he's not face up.  He says he's face down, all these men are kicking him and at the time he wants you to believe that Bensney Toussaint is slamming his head in the ground.  But then he says I can still see Rodley Doriscat[, Dorisca's cousin and fellow cookout-goer,] come up, poke Bensney with the gun.  I can see Bensney reach for it and then I see Rodley shoot him.
>
> Is that credible?  Is it reasonable that someone with his face down can miraculously now see Rodley Doriscat allegedly shooting to protect him?  No.  But he needs it to be credible.  Why?  He needs to corroborate the confession.

Dorisca objected because he never testified that he saw Rodley[2] shoot Toussaint (no one disputes this was a misstatement).  Rather, Dorisca had testified that he saw Rodley running away with a gun.  He also testified that Rodley later explained to Dorisca that he had poked Toussaint with the gun (in an effort to get Toussaint

---

[2] Rodley -- who we refer to by first name to avoid confusion -- committed suicide about three years before trial, having never gone to the police as Dorisca testified Rodley told him he would.

off Dorisca, he said), but when Toussaint grabbed Rodley's wrist, Rodley shot him.

The next prosecutorial misstep (undisputedly a misstatement, like the one before it) came when the prosecutor mischaracterized how Dorisca had testified regarding the arresting event in Florida. Specifically, in the course of being picked up, Dorisca was a passenger in a car that was stopped by a police officer. During closing, the prosecutor stated that Dorisca testified that the officer asked for Dorisca's name before requesting the driver's name. The prosecutor told the jury, "[t]he defendant says that he is stopped and [the officer] asks him first, not the driver who is stopped, but the passenger what his name was." Dorisca objected because what Dorisca actually said was that the officer questioned the driver, then asked for Dorisca's name, and although Dorisca initially gave the officer his real name, the officer did not believe him (thinking that Dorisca, like the driver, should have a Haitian-sounding name (whatever that means)), so Dorisca offered him a fake name instead. At some point, Dorisca moved for a mistrial on the basis of these misstatements, but it is unclear from the record precisely when that motion was made.

Before sending the jury out, the trial judge gave the jury the standard instruction that closing arguments are not evidence. The jury convicted Dorisca of second-degree murder.

As we already mentioned, Dorisca appealed his conviction to the MAC, but that appeal was unavailing -- the MAC concluded that, despite what it deemed an error in designating Dr. Springer "unavailable," the admission of the videotaped deposition was harmless, and further, the misstatements by the prosecution in closing were not prejudicial and not significant in view of the evidence as a whole.[3]  Dorisca, 42 N.E.3d at 1192-93, 1193 n.19. The Supreme Judicial Court of Massachusetts denied without a written opinion Dorisca's application for leave to obtain further appellate review.  Commonwealth v. Dorisca, 48 N.E.3d 464 (Mass. 2016).

Out of options in the state court system, Dorisca petitioned the federal district court for habeas relief, 28 U.S.C. § 2254, arguing violations of his right to confrontation (based on the admission of Dr. Springer's videotaped deposition testimony) and of due process (based on what Dorisca characterizes as prejudicial misstatements of evidence during closing arguments),[4]

---

[3] We will not recount each of the appellate contentions Dorisca has advanced since his trial because only two are before us on appeal, as we will explain.

[4] We note that Dorisca initially advanced three grounds for habeas relief -- (1) the violation of his right to confrontation of a witness, (2) violation of due process by denying his motion for mistrial due to misstatements of evidence during the state's closing, and (3) violation of due process in allowing repetitious testimony into evidence -- but the state moved to dismiss the entire petition because ground (3) had not been exhausted.  The district court stated that it would grant the motion to dismiss unless Dorisca moved to dismiss the unexhausted claim, and when he

- 7 -

but the district court, concluding that the MAC's harmlessness determination as to the challenged deposition testimony was appropriate and the MAC's decision with respect to the prosecutorial misconduct did not run afoul of Supreme Court precedent, dismissed the petition (granting a certificate of appealability). Dorisca challenged that dismissal, which brings us to the appeal now before us.

## DISCUSSION

The district court did not hold an evidentiary hearing (nor was it asked to), so it made no factual findings of its own. As such, our review of the district court's dismissal of the habeas petition is de novo. See Bebo v. Medeiros, 906 F.3d 129, 134 (1st Cir. 2018), cert. denied, 139 S. Ct. 1203 (2019) (citing Pike v. Guarino, 492 F.3d 61, 68 (1st Cir. 2007)). "Like the district court, however, we are required to afford significant deference to the state court's decision under most circumstances." Lucien v. Spencer, 871 F.3d 117, 122 (1st Cir. 2017) (citing Scoggins v. Hall, 765 F.3d 53, 57 (1st Cir. 2014)).

Before turning to Dorisca's arguments, we provide the big-picture legal framework that will shape our analysis. Just like the district court's review of Dorisca's habeas petition,

_____

did so, the district court granted that motion. So Dorisca ultimately pursued only grounds (1) and (2) before the district court. Those are the sole grounds here on appeal.

- 8 -

ours is shepherded by AEDPA. 28 U.S.C. § 2254. As an overarching matter, under AEDPA, "error by a state court, without more, is not enough to warrant federal habeas relief." Bebo, 906 F.3d at 134 (quoting Cronin v. Comm'r of Prob., 783 F.3d 47, 50 (1st Cir. 2015)). Indeed, as relevant here, a state court decision may be overturned on habeas review only when a petitioner demonstrates that the state court's adjudication on the merits of his claims resulted in a decision that is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). We've observed that AEDPA's "standards ensure that federal habeas relief will be granted only in cases in which all fairminded jurists would agree that a final state court decision is at odds with the Supreme Court's existing precedents." Bebo, 906 F.3d at 134 (citing Harrington v. Richter, 562 U.S. 86, 102 (2011)). Indeed, "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). As such, a habeas petitioner must show "the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Linton v. Saba, 812 F.3d 112, 123 (1st Cir. 2016) (quoting Harrington, 562 U.S. at 103).

This first layer of set-up complete, we turn to the specifics of Dorisca's two claims before us: (1) his right to confrontation was violated when, in an unreasonable application of federal law resulting in prejudicial error, the deposition testimony of Dr. Springer was admitted without an adequate showing that she was unavailable to testify at trial; and (2) his due-process rights were violated when his mistrial motion -- based on the misstatements of evidence during closing arguments and the trial judge's response to them -- was denied.

## 1. Admission of Dr. Springer's deposition testimony and the MAC's harmlessness determination

Dorisca argued that the trial court's admission of Dr. Springer's deposition (premised on an erroneous unavailability determination) violated his right to confrontation, and the MAC agreed, finding error in the trial judge's unavailability determination. But the MAC reasoned that the error was a harmless one (more on this shortly), and it is this harmlessness determination that Dorisca tells us the MAC got wrong.[5] He says the error was not harmless in that, without live cross-examination, his ability to challenge the case against him was substantially prejudiced, particularly as to who pulled the trigger and the

---

[5] Dorisca never truly fleshes out exactly how it is that the MAC's harmlessness determination was an unreasonable application of federal law (nonetheless we work with the arguments he does offer in support of his proposition that the MAC's "decision was unreasonable").

- 10 -

trajectory of the gunshots.  He could not fully and effectively explore these topics -- especially the "intermediate range" piece -- in the course of Dr. Springer's deposition because he did not yet have the full picture of wholly developed facts.  And the jury was left with no way to assess Dr. Springer's credibility and reliability.  At oral argument, Dorisca said the deposition had been approached more like traditional discovery rather than as something that would be introduced at trial:  counsel told us he figured the deposition wouldn't be defense counsel's "last shot at Dr. Springer."  Dorisca has not explained why it was reasonable for him to believe defense counsel would have another opportunity to examine Dr. Springer when the trial judge had demonstrated clear intractability when it came to moving the trial date to ensure her availability, but this is his position.

Meanwhile, the Commonwealth asserts that even if there was a confrontation clause violation, the MAC did not unreasonably apply federal law in reaching its conclusion that any such error was a harmless one.[6]  Running through factors set forth in the relevant clearly established federal law, which is Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986), the Commonwealth tells us, inter alia, that Dr. Springer's testimony was "largely redundant of other

---

[6] The Commonwealth tells us that the MAC's decision was not contrary to Supreme Court precedent (another of AEDPA's grounds for habeas relief, remember) -- but since Dorisca himself never argues that point, we don't go there.

evidence" and that her testimony regarding the intermediate shooting range "actually redounded to the benefit of" Dorisca since it empowered him to press the theory that the shooter was someone farther away from Toussaint than Dorisca had been. The Commonwealth also notes that Dorisca's arguments with respect to the prejudice he says he suffered are speculative.

So let's turn to the merits. At the heart of Dorisca's claim for habeas relief here is the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court in Davis v. Washington, 547 U.S. 813, 821 (2006), held that this provision "bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" Id. (quoting Crawford v. Washington, 541 U.S. 36, 53-54 (2004)).

Recall that the trial judge here had deemed Dr. Springer unavailable, a determination he arrived at based on the Commonwealth's report several days earlier that she was in labor. That ruling in place, the prosecutor offered, and the trial judge allowed into evidence, Dr. Springer's videotaped deposition in which she testified about Toussaint's wounds and cause of death. In the course of her testimony, she explained that the gunshots to Toussaint's chest caused his death, and she believed the wounds

were not so-called "close" wounds, but rather they were caused by gunshots fired from a distance of "a couple of inches to a few feet away," or from "intermediate range."

When the case reached the MAC, it had the benefit of a new framework handed down to it by the Commonwealth's high court that "clarified the requirements for a judicial determination of unavailability." Dorisca, 42 N.E.3d at 1189 (citing Commonwealth v. Housewright, 25 N.E.3d 273, 281 (Mass. 2015)). Long story short, Dorisca's trial judge's unavailability determination fell short: the trial judge did not have (or inquire about) up-to-date information about Dr. Springer's condition and had failed to either consider whether she could appear later in the trial or to entertain a short continuance to accommodate her current unavailability, so the MAC concluded that the admission of the deposition violated Dorisca's right to confrontation. Id. at 1191.

From there, the MAC pivoted to a Chapman v. California, 386 U.S. 18 (1967), harmless-beyond-a-reasonable-doubt analysis because even though this constitutional right was violated, it does not automatically follow that Dorisca was entitled to relief, see, e.g., Glebe v. Frost, 574 U.S. 21, 23 (2014) (per curiam) ("*Most* constitutional mistakes call for reversal only if the government cannot demonstrate harmlessness[,] Neder v. United States, 527 U.S. 1, 8 (1999)[, while] [o]nly the rare type of error . . . requires automatic reversal."). So the MAC queried: the

unavailability determination was an error (resulting in a confrontation clause violation), but was it a harmless one? Dorisca, 42 N.E.3d at 1191 (Commonwealth v. Marini, 378 N.E.2d 51, 58 (Mass. 1978), which quotes Chapman, 386 U.S. at 24). The MAC answered that question in the affirmative -- it was a harmless error because: the central factual dispute was the identity of the shooter, and Dr. Springer's testimony had no bearing on that question because nothing in her testimony made it more likely that the shooter was Dorisca; only passing reference was made to her testimony in closing argument -- for both sides; Dorisca actually relied on her intermediate range testimony to support his position that the shooter was Rodley; Dorisca had not pointed the MAC to any testimony by Dr. Springer that was "essential to the Commonwealth's case or significant to the jury's resolution of the defendant's guilt"; Dr. Springer's testimony was cumulative, not significant or indispensable; and Dorisca "thoroughly cross-examined Dr. Springer at her deposition, and there is no indication that either her testimony or the defense strategy on cross-examination would have differed at trial." Dorisca, 42 N.E.3d at 1192 (collecting cases applying Chapman or Chapman-style harmless-error analysis in this context).

Our job is to scrutinize the harmlessness determination. "[W]hen a state court determines that a constitutional violation [here, the confrontation clause violation stemming from the faulty

- 14 -

unavailability determination] is harmless [under Chapman, 386 U.S. at 24], a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable."[7] Fry v. Pliler, 551 U.S. 112, 119 (2007) (citing Mitchell v. Esparza, 540 U.S. 12 (2003) (per curiam)).  Indeed, the critical inquiry is whether the *MAC's* harmlessness determination was reasonable; we do not perform our *own* harmlessness analysis.

We conclude that Dorisca has not met his burden on the threshold issue of whether the harmlessness determination stemmed from an unreasonable application of Supreme Court law.  We explain.

In looking de novo at the MAC's harmlessness determination, we keep in mind that an unreasonable application of

---

[7] In Chapman, the Court "articulated the constitutional harmless error standard, which provides that, on direct appellate review, an error at trial affecting the defendant's constitutional rights will be deemed harmless only if it can be shown to be harmless beyond a reasonable doubt."  Connolly v. Roden, 752 F.3d 505, 509 (1st Cir. 2014), cert. denied, 135 S. Ct. 960 (2015) (citing Chapman, 386 U.S. at 24).

Our court has explained that, "when a state court decides that a constitutional error is harmless beyond a reasonable doubt under Chapman, a federal court on habeas review may choose between two equally valid options" in undertaking its review:  ask under AEDPA whether the harmlessness determination was an unreasonable application of Chapman, and only if it was may we move on to ask whether actual prejudice resulted; or begin directly with the actual-prejudice question.  Connolly, 752 F.3d at 511; see also Fry v. Pliler, 551 U.S. 112, 120 (2007).

Truth be told, there's more background to all of this, and we would urge the curious reader to check out Connolly for a helpful account of Supreme Court pronouncements regarding our review in this arena.  For our purposes today, though, we need not replicate the entire history Connolly lays out.

federal law happens when a state court "identifies the correct governing legal principle from the Supreme Court's then-current decisions but unreasonably applies that principle to the facts of the prisoner's case."  Hensley, 755 F.3d at 731 (quoting Abrante v. St. Amand, 595 F.3d 11, 15 (1st Cir. 2010)).  "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law,'" and a state court is afforded "deference and latitude."  Harrington, 562 U.S. at 101 (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)); see also Hensley, 755 F.3d at 731.  And we observe that it must be an objectively unreasonable application of federal law -- "even 'clear error' will not suffice."  White v. Woodall, 572 U.S. 415, 419 (2014) (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)).

Here, Chapman and Van Arsdall -- taken together -- are what the MAC is alleged to have unreasonably applied.  Chapman, 386 U.S. at 24, as we just mentioned, announces the constitutional harmless-error standard, while Van Arsdall, 475 U.S. at 684, tells us that, when it comes to a confrontation clause violation under Chapman, a court should take into account "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the

- 16 -

prosecution's case."  In reviewing Dorisca's claim of error, the MAC undertook a Chapman harmlessness analysis that tracked (without explicitly referring to) the factors laid out in Van Arsdall.

Dr. Springer's videotaped deposition testimony was referenced only in passing during each side's closing, which we take to mean it wasn't afforded a high mark on "importance" to the prosecution's case since the MAC observed that closing arguments focused more on credibility determinations.  Dorisca, 42 N.E.3d at 1192.  Indeed, the MAC reasoned that Dorisca never pointed to any testimony by Dr. Springer "that was essential to the Commonwealth's case."  Id.  And it is clear that Dr. Springer's testimony with respect to the nature and extent of Toussaint's wounds, as well as his cause of death, was corroborated by other witnesses and evidence (such as the emergency room doctor, autopsy photographs, and medical records).  Id. at 1192 & n.17.  The cause of death was not disputed, so Dr. Springer's testimony on that score was not of the utmost importance, either; and to the extent her "intermediate range" testimony could be seen as problematic, her testimony on that topic neither incriminated Dorisca nor absolved him of guilt since the gunshots' point of origin remained wholly in doubt.[8]  Id.

---

[8] Dorisca does not contend that Dr. Springer's "intermediate range" testimony supported a Dorisca-pulled-the-trigger theory of the crime, nor does he say it was a particularly important component of the Commonwealth's case or critical to the eventual

- 17 -

In fact, as the MAC reasoned, Dorisca himself even used Dr. Springer's testimony on that point to cast reasonable doubt on Dorisca being the shooter (telling the jury it could have been Rodley, not Dorisca, who pulled the trigger).  Id. at 1192.

And what's more, nothing in the record or the appellate papers before us indicates that Dr. Springer's testimony would have been any different at trial than it was at deposition.  While Dorisca tells us her live testimony would have been preferable -- and we're not saying we disagree -- the fact is that the deposition was being conducted in lieu of live testimony, so he should have planned accordingly rather than banking on getting "another shot at Dr. Springer" at trial.

The strength of the Commonwealth's case is yet another factor, and one which also supports the harmlessness determination.  Indeed, the MAC noted that even with the identity of the shooter a mystery, the "compelling circumstantial evidence" against Dorisca was "sufficient to permit the jury to find [him] guilty beyond a reasonable doubt."  Id. at 1187.  More particularly, the MAC pointed to "eyewitness testimony that only two men were fighting, one of whom was the defendant and the other

-----

guilty verdict, so any such argument is waived.  Moreover, we do not see how such arguments could succeed in light of the Brecht v. Abrahamson, 507 U.S. 619 (1993), standard.

- 18 -

the victim, and conduct of and statements made by the defendant indicating consciousness of guilt." Id.

In light of all this, we cannot say that the MAC's conclusion was an unreasonable application of Chapman and, by extension, Van Arsdall.[9] Remember, the MAC's determination would need to be objectively unreasonable -- clear error, even if we saw it (and we don't), wouldn't do the trick. White, 572 U.S. at 419. In the end, and giving the MAC the due "deference and latitude" it is owed, Harrington, 562 U.S. at 101, we do not see any objectively unreasonable application of the law, nor can we conclude that "all fairminded jurists" would see the MAC's decision as being "at odds with the Supreme Court's existing precedents," Bebo, 906 F.3d at 134 (citing Harrington, 562 U.S. at 102). Bound by the confines of AEDPA and all the case law we've laid out in reaching this point, we conclude that the district court did not err when it concluded that the MAC reasonably determined that the constitutional violation was harmless beyond a reasonable doubt, so Dorisca is not entitled to habeas relief on this ground.[10]

---

[9] We pause here only to observe that consideration of another of Van Arsdall's factors cited by the MAC -- cumulativeness -- would not alter our conclusion. Even if Dr. Springer's testimony was not actually "cumulative of other evidence in the case," Dorisca, 42 N.E.3d at 1192, it is one factor of many, so our preceding analysis of and conclusion regarding the MAC's harmlessness determination (based on Chapman and the other Van Arsdall factors) would be unchanged.

[10] Because we so conclude, we need not contend with actual prejudice. See Connolly, 752 F.3d at 514 (taking this approach).

- 19 -

## 2. Prosecution's misstatements during closing arguments

In his next effort to support his habeas petition, Dorisca contends that the prosecution intentionally misstated the evidence twice during the course of the closing argument, and those misstatements, along with the trial judge's refusal to grant a mistrial, constitute a prejudicial error. Remember, the misstatements were (a) Dorisca testified that he saw Rodley shoot Toussaint (which is not what he said) and (b) Dorisca testified that the officer asked for his name first, not the driver's name (the reverse was what Dorisca had said). This prosecutorial misconduct, Dorisca says, rendered the whole of Dorisca's testimony implausible and undermined his credibility, and the trial judge's "boilerplate" jury instruction that closing

---

But, even if the MAC's harmlessness determination was premised on an unreasonable application of the law, Dorisca still would not prevail because he cannot show error under the actual-prejudice standard. See Brecht, 507 U.S. at 637 (explaining the key inquiry of whether an error had substantial and injurious effect on the verdict -- habeas petitioners are not necessarily entitled to relief unless they establish that the error resulted in actual prejudice). Here, Dorisca did not identify any non-speculative actual prejudice. In his papers and at oral argument, Dorisca claimed the actual prejudice was that Dr. Springer never appeared before the jury and her intermediate range testimony, without live cross-examination, was harmful to his case. This is purely speculative and certainly doesn't rise to the level of a substantial and injurious effect on the verdict since Dorisca has not demonstrated what would have been different about Dr. Springer's cross-examination at trial versus at deposition, nor has he identified what information he had hoped to pin down through Dr. Springer's cross that was not already in the record.

arguments are not evidence was insufficient to address the ramifications of the misstatements.

But, although he identifies the relevant clearly established Supreme Court case, nowhere in the pages Dorisca devotes to this argument does he explain to us how the MAC's prosecutorial-misstatements analysis ran contrary to or constituted an unreasonable application of the law, as he must to succeed. 28 U.S.C. § 2254(d)(1). Instead, he focuses on relitigating the incorrectness of the misstatements and how the trial judge's "bland" curative instruction failed to offset the negative effect the misstatements had on the jury -- both are relevant to our review of his claim, but he has not shown us how, under AEDPA, the MAC's determinations on those points ran afoul of the contrary to/unreasonable application of federal law standard.

In any event, because we can go the route of rejecting Dorisca's claim on the merits -- and because the Commonwealth did not implore us to do otherwise -- we need not go as far as to say this piece of the appeal is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (treating arguments not developed on appeal as waived because litigants must develop their own arguments rather than "leaving the court to do counsel's work").

So, with our AEDPA framework in mind, we turn to the MAC's analysis. In evaluating the appellate contentions relative to the prosecutor's misstatements, the MAC properly relied on

- 21 -

Massachusetts state law consistent with Darden v. Wainwright, 477 U.S. 168 (1986), the clearly established Supreme Court case law instructing that "it is not enough that [a] prosecutors' remarks [are] undesirable or even universally condemned." Id. at 181 (internal quotation marks omitted). Under Darden, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). That question is to be answered on a case-by-case basis, Parker v. Matthews, 567 U.S. 37, 48 (2012), taking into account considerations such as whether the jury was adequately instructed, the nature and seriousness of the comments, and the weight of the evidence, see, e.g., Dagley v. Russo, 540 F.3d 8, 15 n.3, 17-18 (1st Cir. 2008) (citing Darden, 477 U.S. at 178-83; Donnelly, 416 U.S. at 642-45); see also Hardy v. Maloney, 909 F.3d 494, 501 (1st Cir. 2018).

Here, the MAC agreed that the prosecutor misstated the testimony, but determined that, "[u]nder the circumstances," considering the evidence as a whole, the misstatements were not prejudicial in that they were not significant errors. Dorisca, 42 N.E.3d at 1192-93, 1193 n.19 (citing Commonwealth v. Wood, 14 N.E.3d 140, 158-59 (Mass. 2014); Commonwealth v. Kozec, 505 N.E.2d 519, 520 (Mass. 1987)). Yes, the prosecutor's statement that Dorisca had seen Rodley shoot Toussaint was inaccurate, but the

- 22 -

MAC concluded that because Dorisca "testified that he heard shots, and then saw Rodley running from the scene holding a gun," and further had "testified that Rodley told him that he poked the victim with a gun," the prosecutor's error was not prejudicial. Dorisca, 42 N.E.3d at 1193. And with respect to the officer asking Dorisca his name either before or after asking the driver, depending on who's telling the story, the MAC held that the prosecutor's inaccurate version was not prejudicial error because it was insignificant. Id. at 1193 n.19 (citing Commonwealth v. Richenburg, 518 N.E.2d 1143, 1150 (Mass. 1988)). Moreover, the trial judge "instructed the jury that the arguments were not evidence, and that the jurors were to rely on their own memories of the evidence." Id. at 1193.

Overall, the MAC appropriately considered the seriousness of the misstatements, the weight of all the evidence, and the curative instructions issued. See, e.g., Dagley, 540 F.3d at 15 n.3, 17-18 (citing Darden, 477 U.S. at 178-83; Donnelly, 416 U.S. at 642-45). Accordingly, the MAC's determination that the prosecutor's misstatements were not prejudicial is not contrary to or an unreasonable application of clearly established federal law, nor did the misstatements "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181 (quoting Donnelly, 416 U.S. at 643). The

district court, given AEDPA's strictures, correctly determined that Dorisca is not entitled to habeas relief on this ground.

## CONCLUSION

For the reasons stated, the district court's dismissal of the habeas petition is affirmed.